# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION

| | |
|---|---|
| NADINE BALLARD, on behalf of herself and all others similarly situated,<br><br>                      Plaintiff,<br><br>   v.<br><br>BANK OF AMERICA, N.A.; BANK OF AMERICA CORPORATION; and DOES 1-10,<br><br>                      Defendants. | Case No. 3:23-cv-422<br><br>**CLASS ACTION**<br><br>**DEMAND FOR JURY TRIAL** |

# CLASS ACTION COMPLAINT

Plaintiff Nadine Ballard ("Plaintiff"), on behalf of herself and all others similarly situated, alleges the following Class Action Complaint (the "Action") against the above-captioned Defendants, Bank of America, N.A., Bank of America Corporation, and Does 1-10 (collectively, "BoA") upon personal knowledge as to herself and her own actions, and upon information and belief, including the investigation of counsel as follows:

## I. NATURE OF THE ACTION

1. Across the United States, BoA's customers have been discovering an alarming fact: that their bank, the second largest bank in the country, had inexplicably opened accounts for them without their authorization or knowledge. Plaintiff Ballard and the Class are banking customers of BoA who had unauthorized accounts opened for them by BoA from January 1, 2012, through December 31, 2022 ("Class Period") and suffered harm as a result.

2. BoA's business model is based in large part on enrolling consumers in as many banking products as possible. These banking products, which include savings accounts, checking accounts, credit cards and debit cards, and other similar banking products (the "Products"), are opened on behalf of consumers in order to meet the banking needs of the customers.

3. It recently came to light that, in order to maximize the number of Products sold, and thus maximize BoA's profits, BoA routinely – and shockingly – opened consumer accounts for Products without the consumer's authorization or knowledge. Then, when customers fail to maintain mandatory account balances or pay fees for accounts that they did not know existed, BoA charges the consumer penalties and/or other fees.

4. BoA further profits and benefits from the opening of accounts without consent by being able to artificially inflate their 'new accountholder' statistical metrics on their Securities and Exchange Commission reporting.

5. According to the Consumer Financial Protection Bureau ("CFPB") – which levied enormous fines and penalties against BoA for this exact conduct in July of 2023 – BoA's employees were driven to open these accounts "in response to sales pressure or to obtain incentive awards."[1] These accounts "generated associated fees from credit card accounts opened without consumers' consent."[2]

6. In order to open these accounts, BoA employees "used or obtained consumer reports to consumer consumers for new credit cards even when the consumers had not applied for or did not want the products and where [BoA] did not otherwise have a purpose for the consumer reports."[3]

7. As a result of BoA's practices, consumers suffered substantial concrete damages through fees charged, impacts to credit consumer profiles, the loss of control over personally sensitive and/or identifiable information, the expenditure of consumer time and effort investigating the facts and seeking closure of unwanted accounts, and the need to monitor and mitigate harm going forward.[4]

8. Under the control of BoA and its supervisory employees, BoA promotes this fee generating scheme by imposing unrealistic sales quotas on its employees. BoA adopted policies

---

[1] *In the Matter of Bank of America, N.A.*, C.F.P.B. Admin. Proceeding File No. 2023-CFPB-0007 (2023), ECF No. 1, ¶ 25.

[2] *Id* ¶ 29.

[3] *Id* ¶ 28.

[4] *Id* ¶ 30.

that have, unsurprisingly, driven its bankers to engage in widescale, systemic criminal behavior, including forging consumers' signatures on account applications and abusing access to customers' sensitive information, to meet those unreachable goals.

9. BoA allowed this fraud to fester for over a decade, profiting off of the harm it directly caused to the consumers who trusted BoA. Until the CFPB took decisive action against BoA, BoA had every incentive to continue this illegal conduct because it is a fee-generating machine that produced extraordinary profits for the bank at the expense of its consumers.

10. Plaintiff Ballard and the Class bring this Action under federal and state law for actual damages, statutory damages, pre- and post-judgment interest, reasonable costs and attorney's fees, and all other relief this Court deems proper.

## II. JURISDICTION AND VENUE

11. This Court has subject matter jurisdiction pursuant to federal law, under the Electronic Funds Transfer Act, the Truth in Lending Act, and the Fair Credit Reporting Act.

12. Alternatively, this Court has subject matter jurisdiction over the Action pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d), because this Action (1) involves millions of putative class members; (2) there is minimal diversity between at least one member of the putative Class and Defendants; and (3) in the aggregate, the claims of Plaintiff and the putative Class exceed the sum or value of $5,000,000, exclusive of costs and interest.

13. This Court has personal jurisdiction over Defendants because they maintain their principal place of business in Charlotte, North Carolina. This Court also has personal jurisdiction over Defendants because the events giving rise to this Action occurred in Charlotte, North Carolina. Defendants have continuous and systematic contacts with the State of North Carolina, availing itself to the laws of North Carolina.

14. Venue is proper in this Court under 28 U.S.C. § 1391, because Defendants maintain their principal place of business in this District. Additionally, the conduct giving rise to the allegations and claims asserted in this Action originated and occurred in this District.

## III. PARTIES

*Plaintiff Nadine Ballard*

15. Plaintiff Nadine Ballard is and at all times was a resident and citizen of Ohio. Plaintiff became aware in March of 2023 that BoA had opened an unauthorized credit card account in her name. Due to the unauthorized credit card being opened by BoA, Plaintiff has spent substantial time to correct her credit report as well as to lodge complaints with the appropriate government agencies, including the CFPB.

16. As a result of BoA's conduct, Plaintiff suffered significant harm.

*The Bank of America Defendants*

    *a. Defendant Bank of America, N.A.*

17. Defendant Bank of America, N.A. is a national banking association chartered under the laws of the United States with its principal place of business located in Charlotte, North Carolina. Defendant operates more than 3,900 full-service bank branches nationwide, through which it offers banking products, including the Products as alleged herein.

    *b. Defendant Bank of America Corporation*

18. Defendant Bank of America Corporation is a Delaware corporation with its principal place of business located in Charlotte, North Carolina. Defendant is a bank holding company as well as a financial holding company.

    *c. Doe Defendants 1-10*

19. Doe Defendants 1-10 are affiliates, subsidiaries, or related corporate entities of BoA whose identities will be identified in the discovery phase of this litigation.

## IV. FACTUAL ALLEGATIONS

### a. Defendants' Business

20. BoA is the second largest bank in the United States. BoA holds over $3 trillion in assets and employs over 200,000 employees in the U.S. across 38 states.

21. In the course of doing business, BoA opens millions of new accounts on an annual basis. According to BoA's 2022 Securities and Exchange Commission ("SEC") 10-k, BoA opened approximately 4.4 million new accounts in 2022 and 3.6 million accounts in 2021. These metrics are considered by BoA to be "key statistics" regarding BoA's consumer lending business according to BoA's various public filings with the SEC.

### b. BoA Requires Employees to Reach Unreasonable Quotas

22. During the Class Period, one factor considered by BoA when evaluating financial center employees' overall performance and incentive compensation was the number of new consumer financial products or services that were opened for consumers.

23. In response to intense sales pressure and/or to receive incentive rewards, BoA's employees from time to time submitted applications for BoA's Products and issued credit cards and opened other Products without consumers' consent.

24. Additionally, in the process of opening unauthorized accounts, BoA used or obtained consumer reports to consider consumer eligibility for new credit cards or other Products even when consumers did not apply for and did not want those Products. BoA had no permissible purpose for furnishing said consumer reports.

5

25. As a result of opening new accounts, BoA was able to inflate the key metrics regarding new accountholder information in its SEC filings, and – equally troubling – was able to accrue associated fees from those accounts opened without consumer consent.

26. BoA was only able to inflict this fraud onto BoA consumers by allowing BoA's employees to illegally have unfettered access to and otherwise unlawfully abuse consumer information needed to open new accounts on that respective consumer's behalf. Without BoA's failed system to protect consumer information, the scheme could not have occurred.

### c. *BoA's Practices Cause Serious Harm to Plaintiff and the Class Members*

27. BoA consumers who have discovered unauthorized accounts often make the discovery inadvertently.

28. Those consumers confront, for instance, mailings from BoA congratulating a consumer on opening a new account the consumer does not recognize; or asking a consumer to update account information for accounts that the consumer does not recognize; receiving new unrequested debit or credit card; or discovering that checks a consumer intended to be deposited into an authorized account do not appear in monthly statements because the checks had instead been deposited into an unauthorized account.

29. Consumers suffer significant harm in numerous ways from BoA's illegal practices, including but not limited to the following: (a) customers lose money to monthly service fees charged for unauthorized accounts; (b) consumers' credit reports are affected, impacting job applications, loans for automobiles, and mortgage applications; and (c) consumers are forced to purchase costly identity theft protection services to ensure against further fraudulent activities. But for BoA's quota-based business model, its consumers would not have incurred wrongful fees,

suffered derogatory references on their credit reports, or been forced to purchase identity theft protection.

### d. BoA Knew Of The Scheme

30. BoA knew that its employees routinely open unauthorized accounts. This is because BoA is aware its quotas are unrealistic for employees during normal working hours. BoA is entirely cognizant of the fact that these sorts of schemes exist within banking institutions. Moreover, the sheer magnitude of the scheme renders it all but impossible for BoA (and its vaunted compliance department) to have been unaware of the scheme.

### e. Fraudulent Concealment

31. BoA actively took efforts to conceal its opening of accounts without consumer approval. As a result, consumers could not know that BoA employees were opening unauthorized accounts in their name. Consumers were unaware of the unauthorized accounts opened by BoA.

## V. CLASS ALLEGATIONS

32. This Action is brought by Plaintiff on behalf of herself and all those similarly situated under Federal Rules of Civil Procedure 23(b)(2) and (b)(3). The Class that Plaintiff seeks to represent is defined as follows:

> **Class Definition.** All persons in the United States for whom BoA or a BoA employee opened a financial account or product in the person's name without that person's authorization.

33. **Numerosity.** The members of the Class are so numerous that joinder of all members of the Class would be impractical. The proposed Class contains many thousands of members. The precise number of members can be ascertained through discovery, which will include Defendants' records.

34. **Commonality and Predominance.** There are common questions of law and fact that predominate over questions affected only individual Class members:

   a. Whether and how BoA and its employees engaged in unlawful practices in order to open unauthorized accounts for consumers;

   b. Whether BoA knew or should have known of its employees' unlawful practices;

   c. Whether BoA omitted and concealed material facts from its communications and disclosures to Plaintiff and the Class regarding the costs, benefits, and policies regarding unauthorized bank accounts and other Products;

   d. Whether BoA has engaged in unfair methods of competition, unconscionable acts or practices, and unfair fair or deceptive acts or practices with the unauthorized opening of accounts and other Products;

   e. Whether BoA violated North Carolina and/or other states' consumer protection statutes;

   f. Whether BoA violated the federal statutes detailed herein;

   g. Whether BoA has been unjustly enriched;

   h. Whether BoA is liable for conversion;

   i. Whether, because of BoA's conduct, Plaintiff and the Class have suffered damages (and, if so, the appropriate amount thereof); and

   j. Whether because of BoA's misconduct, Plaintiff and the Class are entitled to equitable and declaratory relief (and, if so, the appropriate nature and contours of that relief).

35. **Typicality.** Plaintiff's claims are typical of the claims of the members of the Class. Plaintiff and all the members of the Class have been injured by the same wrongful practices of

BoA. Plaintiff's claims arise from the same practices and course of conduct that give rise to the claims of the members of the Class and are based on the same legal theories.

36. **Adequacy.** Plaintiff is a representative who will fully and adequately assert and protect the interests of the Class and has retained class counsel who are experienced and qualified in prosecuting class actions. Neither Plaintiff nor her attorneys have any interests contrary to or in conflict with the Class.

37. **Superiority.** A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit, because individual litigation of the claims of all members of the Class is economically unfeasible and procedurally impracticable. While the aggregate damages sustained by the Class are in the millions of dollars, the individual damages incurred by each Class member are too small to warrant the expense of individual suits. The likelihood of individual Class members prosecuting their own separate claims is remote, and even if every member of the Class could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases. Further, individual members of the Class do not have a sufficiently significant interest in individually controlling the prosecution of separate actions, and individualized litigation would also result in varying, inconsistent, or contradictory judgments and would magnify the delay and expense to all of the parties and the court system because of multiple trials of the same factual and legal issues. Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action.

VI. **CAUSES OF ACTION**

## COUNT I

**Violations of the Electronic Funds Transfer Act ("EFTA")**

(*On Behalf of Plaintiff and the Class*)

38. Plaintiff incorporates by reference every prior and subsequent allegation of this Complaint as if fully restated here.

39. Congress created the Electronic Funds Transfers Act ("EFTA"), 15 U.S.C. § 1693, et seq., to establish a framework to regulate electronic fund and remittance transfer systems, and to establish individual consumer rights related to electronic fund transfers.

40. Pursuant to the EFTA, "No person may issue to a consumer any card, code, or other means of access to such consumer's account for the purpose of initiating an electronic fund transfer other than — (1) in response to a request or application therefor; or (2) as a renewal of, or in substitution for, an accepted card, code, or other means of access, whether issued by the initial issuer or a successor." 15 U.S.C.A. § 1693i(a).

41. BoA violated this prohibition every time it opened new unauthorized accounts, issues debit and/or credit cards, and facilitates other means of access to the unauthorized accounts allowing for electronic funds transfers.

42. Plaintiff and Class members have received debit cards and/or other cards from BoA when Plaintiff and Class members have not requested or applied for such cards.

43. Plaintiff and Class members have received other means of accessing unauthorized accounts, such as online banking access, that would allow them to initiate an electronic fund transfer(s).

44. Pursuant to 15 U.S.C. § 1693m, BoA is liable for actual damages, an amount to be determined by the Court related to the frequency, persistence, and other factors of BoA's violations, plus attorneys' fees and costs.

## COUNT II

### Violations of the Truth in Lending Act ("TILA")

### (*On Behalf of Plaintiff and the Class*)

45. Plaintiff incorporates by reference every prior and subsequent allegation of this Complaint as if fully restated here.

46. Under TILA, "no credit card shall be issued except in response to a request or application therefor." 15 U.S.C. § 1642. TILA's Regulation Z requires that no credit card shall be issued to any person except in response to an oral or written request or application for the card; or as a renewal of, or substitute for, an accepted credit card. 12 C.F.R. § 1026.12(a).

47. By issuing credit cards or debit cards to consumers without the consumers' consent and not in response to an oral or written request or application for the card or as a renewal of, or substitute for, an accepted credit card or debit card, BoA violated Regulation Z, 15 U.S.C. § 1642; 12 C.F.R. § 1026.12(a).

48. As a result of this conduct, Plaintiff and the Class seek all available damages and relief under TILA.

## COUNT III

### Violations of the Fair Credit Reporting Act ("FCRA")

### (*On Behalf of Plaintiff and the Class*)

49. Plaintiff incorporates by reference every prior and subsequent allegation of this Complaint as if fully restated here.

50. Each time that BoA opens a new account or starts a new financial service, it obtains, reviews, and uses a "consumer report," as that term is defined in 15 U.S.C § 1681a(d), regarding the consumer for whom the account is opened or the service started.

51. BoA is required by 15 U.S.C. §§ 1681b, 1681n, and 1681o to refrain from obtaining or using consumer reports from consumer reporting agencies under false pretenses, and without proper authorization from the consumer who is the subject of the report.

52. Obtaining and using consumer reports in the process of opening unauthorized accounts or services is not allowed pursuant to the FCRA, and thus is a violation of federal law.

53. BoA has a mandatory duty to use or obtain consumer reports only for permissible purposes. 15 U.S.C. § 1681b(f).

54. Despite these clear and unambiguous requirements of the FCRA, BoA regularly pulled consumer reports regarding consumers without their knowledge or consent in order to open new unauthorized accounts and services as part of its scheme, in violation of the FCRA.

55. Pursuant to 15 U.S.C. §§ 1681n and 1681o, BoA is liable for negligently and willfully violating the FCRA by accessing the consumer reports without a permissible purpose or authorization under the FCRA.

56. As a result of this conduct, Plaintiff and the Class seek all available damages and relief under the FCRA.

## COUNT IV

**(State Consumer Protection Statute Violations)**

**Violations of North Carolina's Unfair and Deceptive Trade Practices Act ("UDTPA")**

(*On Behalf of Plaintiff and the Class*)

57. Plaintiff incorporates by reference every prior and subsequent allegation of this Complaint as if fully restated here.

58. UDTPA forbids "unfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affective commerce." UDTPA §§ 75-1.1 (a). These acts, pursuant to the statute, are declared unlawful.

59. As alleged throughout this Complaint, BoA engaged in unfair or deceptive trade practices in violation of the UDTPA by opening accounts and Products in the names of consumers without their knowledge or consent.

60. Plaintiff and the Class have lost money and incurred significant loss of time as well as stress as a result of these deceptive acts and practices. In exchange for the harm caused to consumers, BoA perpetrated this scheme as part of a deliberate corporate policy which is morally wrong, callous and/or oppressive.

61. As a result of this conduct, Plaintiff and the Class seek all available damages, including treble damages, under the UDTPA. Additionally, Plaintiff and the Class seek reasonable costs and attorney's fees under the statute.

## COUNT V

### Unjust Enrichment

### (*On Behalf of Plaintiff and the Class*)

62. Plaintiff incorporates by reference every prior and subsequent allegation of this Complaint as if fully restated here.

63. As a result of BoA's unlawful and deceptive actions described above, BoA was enriched at the expense of Plaintiff and the Class through, among other things, the payment of fees, penalties, and other

charges resulting from Products that BoA unlawfully opened for (or sold to) consumers.

64. Under the circumstances, it would be against equity and good conscience to permit BoA to retain the ill-gotten benefits that it received from Plaintiff and the Class, because BoA used illegal, deceptive, and/or unfair practices to open unauthorized accounts and Products for consumers. Thus, it would be unjust and inequitable for BoA to retain those benefits without restitution to Plaintiff and the Class for the monies paid to BoA because of the unfair, deceptive, and/or illegal practices.

65. As a result of this conduct, Plaintiff and the Class seek disgorgement of all ill-gotten profits as a result of the scheme.

## VII. PRAYER FOR RELIEF

Plaintiff, on behalf of herself and all others similarly situated, request the following relief:

A. For an order certifying the Class and appointing Plaintiff as representative for the Class as well as Plaintiff's law firm as counsel for the Class;

B. For an order declaring BoA's conduct to be unlawful;

C. For all recoverable actual, compensatory, statutory and/or other damages sustained by Plaintiff and the Class, including disgorgement;

D. Granting Plaintiff and the Class awards of restitution and/or disgorgement of BoA's profits from the scheme;

E. For attorney's fees and costs;

F. For both pre- and post-judgment interest on any amounts awarded;

G. For treble damages insofar as they are allowed by applicable laws;

H. For appropriate individual relief as requested above; and

I. For such other and further relief as this Court may deem just and proper.

**VIII. JURY TRIAL DEMAND**

66. Plaintiff hereby demands a trial by jury on all issues so triable.

**DATED:** July 13, 2023           Respectfully submitted,

*/s/ Scott C. Harris                5*
Scott C, Harris
NC Bar No.: 35328
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
900 W. Morgan St.
Raleigh, NC 27603
Tel:   919-600-5000
Fax:`  919-600-5035
Email:  sharris@milberg.com

Israel David*
israel.david@davidllc.com
Blake Hunter Yagman*
blake.yagman@davidllc.com
**ISRAEL DAVID LLC**
17 State Street, Suite 4010
New York, New York 10004
Tel.:   212-739-0622

James M. Evangelista*
**EVANGELISTA WORLEY LLC**
500 Sugar Mill Road, Suite 245A
Atlanta, Georgia 30350
Tel.:   404-205-8400
Email: jim@ewlawllc.com

Jennifer Czeisler*
**JKC LAW, LLC**
269 Altessa Boulevard
Melville, New York 11747
Tel.:   516-457-9571
Email: jennifer@jkclawllc.com

Marc E. Dann*
mdann@dannlaw.com
Brian D. Flick*
bflick@dannlaw.com
**DANN LAW FIRM**
15000 Madison Avenue

Lakewood, Ohio 44107
Tel.:	216-373-0539

*Attorneys for Plaintiff and the Proposed Class*

*\*Pro Hac Vice Forthcoming*